**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

MAJOR LEAGUE BASEBALL
PROPERTIES, INC.

                    Petitioner,

    v.

CORPORACIÓN DE TELEVISIÓN Y
MICROONDA RAFA, S.A.

                Respondent.

Case No. 19-cv-8669

**PETITION TO CONFIRM, RECOGNIZE AND ENFORCE**
**ARBITRATION AWARD AND TO ENTER JUDGMENT**

## PRELIMINARY STATEMENT

Major League Baseball Properties, Inc. ("Petitioner" or "MLB") respectfully petitions this Court to confirm, recognize and enforce the arbitration award described herein. On May 29, 2019, at the conclusion of a New York-seated arbitration administered by the International Centre for Dispute Resolution, arbitrator Stephen S. Strick ("Arbitrator") made a final award in which he found Corporación de Televisión y Microonda Rafa, S.A. ("Respondent" or "Telemicro") liable to MLB for breach of contract and ordered Telemicro to pay MLB $5,801,222.71 in damages, including pre-award interest, reasonable attorney's fees and expenses and administrative fees associated with the arbitration. The Arbitrator further ordered Telemicro to pay post-award interest on all sums awarded to MLB at the New York statutory rate of 9% per annum until such time as the final award is satisfied or reduced to a judgment by a court of competent jurisdiction. The Arbitrator also ordered Telemicro to pay reasonable attorney's fees and expenses incurred by MLB associated with the collection and enforcement of the final award. To date, Telemicro has not paid MLB one penny of that amount.

Consistent with the strong federal policy in favor of arbitration, the final award is subject to very limited review by the Court. Confirmation of the final award is proper because none of the limited, narrow grounds for non-recognition articulated in Article V of the New York Convention apply. The Arbitrator was duly appointed by the American Arbitration Association ("AAA") with the parties' consent. The parties—both represented by counsel—conducted extensive discovery and developed a detailed evidentiary record and submitted multiple rounds of briefing to the Tribunal. And, at the conclusion of the proceedings, the Arbitrator applied the law to the facts and made a well-reasoned final award in favor of MLB. The Court should confirm the final award so that MLB can begin collection efforts in the United States.

1

## NATURE OF THE ACTION

1.  MLB brings this proceeding under Section 207 of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 207, and Article III of the United Nations Convention for the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 (the "New York Convention"), to confirm a final and binding arbitration award made in New York, New York, on May 29, 2019 (the "Final Award"), by an arbitration tribunal (the "Tribunal") duly constituted under the auspices of the International Centre of Dispute Resolution ("ICDR") in *Major League Baseball Properties, Inc. v. Corporacion de Television y Microonda Rafa, S.A.*, Case No. 01-17-0007-5412. *See* Declaration of Steven G. Kobre ("Kobre Decl."), Ex. 4.

2.  MLB respectfully requests that this Court confirm the Final Award and incorporate its terms into a judgment in favor of MLB. MLB also seeks post-judgment interest along with further relief as this Court may find just and proper.

3.  This is a summary proceeding under the FAA, which provides that applications "shall be made and heard in the manner provided by law for the making and hearing of motions, except as otherwise herein expressly provided." 9 U.S.C. § 6 (applicable here under 9 U.S.C. § 208). *See Zeiler v. Deitsch*, 500 F.3d 157, 169 (2d Cir. 2007) ("*Zeiler")* ("Confirmation under the Convention is a summary proceeding in nature, which is not intended to involve complex factual determinations, other than a determination of the limited statutory conditions for confirmation or grounds for refusal to confirm."); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 109-10 (2d Cir. 2006) (observing that "normally, confirmation of an arbitration award is 'a summary proceeding that merely makes what is already a final arbitration award a judgment of the court'" and recognizing that a petition to confirm an award should be treated as "akin to a motion for summary judgment") (internal citation omitted).

## THE PARTIES

4.      MLB is a corporation that is incorporated in New York and has its principal place of business in New York, New York. MLB is a licensee of, and acts as, licensing agent for the Office of the Commissioner of Baseball and the 30 Major League Baseball Clubs.

5.      Telemicro is a media company incorporated in the Dominican Republic and has its principal place of business in the Dominican Republic. Telemicro is a multimillion-dollar corporation which bills itself as the largest media provider in the Dominican Republic, offering original content as well as re-transmission programming through cable television and radio, as well as on-line and through other digital platforms. Telemicro is believed to own four television stations, six radio networks and 85 radio stations in the Dominican Republic.

## JURISDICTION AND VENUE

6.      MLB brings this summary proceeding under Chapter 2 of the FAA, 9 U.S.C. §§ 201 *et seq.*, and Article III of the New York Convention to confirm the Final Award. This Court has original jurisdiction over this matter under 9 U.S.C. § 203, which provides that the "district courts of the United States . . . have original jurisdiction over" any "action or proceeding falling under the [New York] Convention." This proceeding falls under the Convention because the Final Award arises out of a commercial contact between MLB and Telemicro, and Telemicro is not a citizen of the United States.  *See* 9 U.S.C. § 202 (providing that an "arbitral award arising out of a legal relationship . . . which is considered as commercial . . . falls under the Convention" unless the relationship was "entirely between citizens of the United States"); *see generally Zeiler*, 500 F.3d at 164 (explaining that the FAA applies the New York Convention to awards made in an

3

arbitration that, despite being seated in the United States, is considered "non-domestic").[1]

7.      This Court also has personal jurisdiction over Telemicro to confirm the Final Award because the arbitration was conducted in New York, New York, as provided for in the dispute resolution clause contained in the contract which governs the relationship between the parties. Specifically, Section X(Q) of the contract states that

> [a]ny controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The place of arbitration shall be New York County, New York State.

This Court has held that where "a party signs an arbitration agreement designating New York City as the site for arbitration proceedings, and then actively participates in those proceedings, the party has in effect consented to this Court's jurisdiction over a subsequent petition to confirm." *Compania Chilena de Navegacion Interoceanica, S.A. v. Norton, Lilly & Co., Inc.*, 652 F. Supp. 1512, 1514 (S.D.N.Y. 1987); *accord In re Coudert Bros. LLP*, No. 16 Civ. 8237, 2017 WL 1944162, at *4 (S.D.N.Y. May 10, 2017) ("By consenting to arbitration in New York, Defendant has agreed to be amenable to the personal jurisdiction of this Court.") (citing *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 983 (2d Cir. 1996)); *Am. Bureau of Shipping v. Tencara Shipyard S.P.A.*, 170 F.3d 349, 352 (2d Cir. 1999) (explaining that it is "well-settled that federal courts applying New York law have personal jurisdiction over parties that agree to arbitrate their disputes in New York."). For the same reason, this Court has personal jurisdiction over Telemicro under 9 U.S.C. § 9 (applicable here under 9 U.S.C. § 208) and Rule 4(k) of the Federal Rules of Civil Procedure.

---

[1] Even if this Court did not have subject-matter jurisdiction under the FAA, which it does, it would have jurisdiction based on diversity of citizenship between the parties, as MLB is a citizen of New York and Telemicro is a citizen of the Dominican Republic, and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332(a)(2), (c)(1).

4

8.      Venue is proper in this judicial district under 9 U.S.C. § 204 because the parties'
contract specified New York City as the seat of arbitration. *See Doctor's Assocs.,* 85 F.3d at 983
("A party who agrees to arbitrate in a particular jurisdiction consents not only to personal
jurisdiction but also to venue of the courts within that jurisdiction.").

## FACTS

9.      On March 31, 2016, MLB and Telemicro entered into an agreement ("Agreement")
which provided Telemicro exclusive rights to broadcast Spanish Language MLB content
throughout the Dominican Republic for the 2016-2018 MLB Seasons. The Agreement also
contained an exclusive option for MLB to extend the contract into the 2020 Season. *See* Kobre
Decl., Ex. 1.

10.     Pursuant to the Agreement, Telemicro was required to make scheduled payments
towards annual broadcast rights fees. *See id.* at 16.

11.     Throughout the 2016 and 2017 MLB Seasons, however, Telemicro failed to make
complete and timely payments under the terms of the Agreement. *See* Kobre Decl., Ex. 5 at 2-4.

12.     On or about May 4, 2017, MLB and Telemicro executed an amendment to the
Agreement which adjusted the schedule for Telemicro's past due and future rights fee payments
("the Amendment"). The Amendment is effective as of January 1, 2017. *See* Kobre Decl., Ex. 2 at
1.

13.     The Amendment included an acceleration clause, whereby, in the event MLB
terminated the Agreement, Telemicro would be immediately liable for $2,500,000 in rights fees
for the 2018 MLB Season. *See id.* at 2.

14.     It was not until May of 2017 that Telemicro came into compliance with its payment
obligations for the 2016 MLB Season. *See* Kobre Decl., Ex. 5 at 4.

15.     For the 2017 MLB Season, Telemicro again failed to meet its obligations. Despite multiple promises to pay, Telemicro made only one single payment of less than $100,000 towards the 2017 rights fee of $2,500,000 as provided for in the Agreement. *See id.* at 5.

16.     Notwithstanding Telemicro's failure to comply with its payment obligations, MLB provided Telemicro with all of the transmission feeds provided for under the Agreement during the 2016 and 2017 MLB Seasons. *See id.*

17.     On November 7, 2017, counsel for MLB sent a letter via certified mail to Telemicro's finance director, Nelson German, informing him that MLB was immediately terminating its Agreement with Telemicro for failure to make payment under the same. *See* Kobre Decl. at ¶ 12.

18.     Pursuant to the terms of the 2017 Amendment, MLB's termination of the Agreement caused the 2018 rights fees to become immediately due and payable. Telemicro has not paid those fees. *See* Kobre Decl., Ex. 2 at 2.

**The Parties Agreed to Arbitrate All Disputes**

19.     The Agreement contains a dispute resolution provision providing for final resolution of any dispute(s) by arbitration. Section X(Q) states:

> Any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association in accordance with its Commercial Arbitration Rules and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof. The place of arbitration shall be New York County, New York State.

Kobre Decl., Ex. 1 at 24.

**The Arbitration before the AAA**

20.     On December 18, 2017, after numerous attempts to get Telemicro to come into compliance with its payment obligations, MLB filed a Demand for Arbitration alleging breach of

contract by Telemicro and seeking damages for unpaid rights fees from the 2017 and 2018 MLB Seasons. *See* Kobre Decl. at ¶ 13.

21.     The parties selected Stephen S. Strick as Arbitrator, in accordance with the dispute-resolution provision in the Agreement, and the Tribunal was established on April 26, 2018. *See id.* at ¶ 14.

22.     For more than six months, the Tribunal oversaw extensive discovery proceedings which included the disclosure of thousands of pages of business and financial documents in both English and Spanish. *See id.* at ¶ 15.

23.     Throughout the course of the arbitration, MLB provided Telemicro with 1,823 pages of discovery material for review. *See id.* at ¶ 16.

24.     Prior to the initiation of the final hearing on November 13, 2018, both parties submitted pre-hearing briefs for the Tribunal's consideration. *See id.* at ¶ 24.

25.     The parties submitted a joint stipulation of 45 facts upon which the Arbitrator relied as evidence during the final hearing. *See* Kobre Decl., Ex. 5.

26.     During the final hearing, the parties further stipulated to the admission of 260 evidentiary exhibits for the Tribunal's consideration (including third-party sales contracts, internal financial and sales documents, internal e-mail communications, and footage of Telemicro's MLB broadcasts). *See* Kobre Decl. at ¶ 20.

27.     MLB's only witness during the hearing was subjected to more than 8 hours of direct and cross examination by the parties as well as questioning from the Arbitrator. *See id.* at ¶ 21.

28.     Telemicro called four witnesses in its case in chief over three days, including an employee of MLB. *See id.* at ¶ 22.

29.     Following the fourth day of live testimony on November 16, 2018, Telemicro submitted a post-hearing summation brief on December 7, 2018. *See id*. at ¶ 25.

30.     MLB submitted a post-hearing brief on December 23, 2018. *See id*. at ¶ 26.

31.     Telemicro submitted a reply to MLB's brief on December 31, 2018. *See id.* at ¶ 27.

**The Partial Final Award**

32.     On February 7, 2019, the Tribunal issued a partial final award ("Partial Final Award") in favor of MLB. *See* Kobre Decl., Ex. 3.

33.     The Partial Final Award specifically addressed the factual record and evidentiary standards associated with every single claim, counterclaim and affirmative defense asserted by MLB and Telemicro throughout the arbitration proceedings. *See* Kobre Decl., Ex. 3 at 9-14.

34.     Specifically, the Tribunal found that MLB proved by a preponderance of the evidence that: (1) MLB and Telemicro entered into a binding Agreement; (2) MLB fully performed its obligations under that Agreement; (3) MLB suffered damages as a result of Telemicro's failure to comply with its payment obligations under the Agreement; and (4) MLB had the right to terminate the contract based on Telemicro's non-performance. *See id*.

35.     The Tribunal granted in full MLB's request for damages in the amount of $2,401,964 for unpaid 2017 rights fees. Telemicro was ordered to pay this amount to MLB within 30 days. *See id*. at 15-17.

36.     The Tribunal also ordered that MLB was owed the full $2,500,000 provided for in the 2017 Amendment "less what [MLB] received" in mitigation from its new broadcasting partner. *See id*.

37.     Finally, the Tribunal ordered that MLB was entitled to receive interest, reasonable attorney's fees, and costs and expenses incurred during the proceeding. *See id*.

38.     Telemico's counterclaims and affirmative defenses were all denied outright. *See id*. at 9-14.

39.     Specifically, the Tribunal rejected claims by Telemico that MLB had fraudulently omitted certain facts during negotiations and/or fraudulently misrepresented the value of the Agreement. *See id.* at 9-10.

40.     Regarding the allegation that MLB omitted certain details about the nature of its relationship with corporate sponsors, the Tribunal noted that the Agreement was an arm's length transaction between two parties who were not in a fiduciary relationship. As such, no duty of disclosure existed. *See id.* at 10.

41.     Regarding the allegation that MLB misrepresented the value of the Agreement to Telemico, the Tribunal noted that MLB executives are entitled to express their opinion regarding the Agreement's value "both economically and otherwise" and were not required to refrain from doing so. *See id.* at 14.

42.     Finally, the Tribunal noted that Telemico failed to conduct due diligence regarding the value of the rights fees and was not under duress at the time it signed the 2017 Amendment. *See id.* at 11-12.

43.     The parties were each provided an opportunity to present evidence and be heard on the issue of mitigation with regards to the 2018 rights fee. Telemico did not submit any evidence. *See* Kobre Decl. at ¶ 29.

44.     On February 25 and March 26, 2019, MLB provided the Tribunal with sworn affidavits from MLB executive Dominick Balsamo and an accompanying wire transfer receipt detailing the amount of money received by MLB for 2018 broadcasting rights from a subsequent broadcasting partner. *See id.* at ¶ 30.

45.     On March 26 and April 4, 2019, in support of MLB's request for reasonable attorney's fees and expenses, MLB provided the Tribunal, *ex parte*, with detailed invoices of all of the work performed by counsel for MLB. MLB also provided an affidavit from its counsel that the rates at which MLB was charged are in line with those charged by similar law firms in New York City for similar types of work. *See id.* at ¶ 31.

46.     The Tribunal declared the arbitration proceedings closed on April 4, 2019. *See id.* at ¶ 32.

47.     At MLB's request and over Telemicro's objection, the Tribunal reopened the proceedings, for the limited purpose of considering two points relevant to the determination of the Final Award amount: (1) Telemicro's non-compliance with the Tribunal's order of payment under the Partial Final Award; and (2) MLB's right to attorney's fees and costs associated with future collection efforts under the Final Award. *See id.* at ¶ 33.

48.     Telemicro informed the Tribunal that it would not participate in the re-opened proceeding. On May 6, 2019 the Tribunal conducted a telephonic hearing, in which MLB participated. On May 14, 2019, the Tribunal again closed the hearing. *See id.* at ¶ 34.

**The Final Award**

49.     On May 29, 2019, the Arbitrator made the Final Award and ordered that Telemicro pay the following amounts to MLB:

a)      $2,401,964 in unpaid rights fees for the 2017 MLB Season.

b)      $1,000,000 in unpaid rights fees after mitigation for the 2018 MLB Season.

c)      $327,353.43 in pre-award interest for unpaid 2017 rights fees.

d)      $205.273.97 in pre-award interest for unpaid 2018 rights fees.

e)      $1,754,736.31 for reasonable attorney's fees and expenses.

10

f)      $111,895.00 for ICDR administrative fees and expenses of the Arbitrator incurred by MLB throughout the Arbitration.[2]

g)      Post-award interest on 2017 rights fees to be calculated at the New York statutory rate of 9% per annum from February 7, 2019 until either paid or reduced to a judgment by a court of competent jurisdiction.

h)      Post-award interest on 2018 rights fees and all other sums awarded to be calculated at the New York statutory rate of 9% per annum from May 29, 2019 until either paid or reduced to a judgment by a court of competent jurisdiction.

i)      Attorney's fees and all costs and expenses incurred by MLB in connection with the collection of the amounts due under the Final Award, including the conversion of the Final Award into a judgment and enforcement of said judgment.

*See* Kobre Decl., Ex. 4 at 5-7.

50.     The Final Award expressly incorporated all previous findings made by the Tribunal under the Partial Final Award. *See id.* at 6.

51.     As noted by the Arbitrator himself in the Partial Final Award, the decisions reached by the Tribunal were the result of an "extensive and comprehensive" review of the record and "all claims and defenses were given careful and full consideration." *See* Kobre Decl., Ex. 3 at 15.

---

[2] The Final Award states that MLB shall be entitled to collect this amount from Telemicro upon a showing that the fees have been paid in full to the ICDR. A true and correct copy of ICDR's financial history is filed herewith as Exhibit 6 to the Kobre Declaration. This document confirms that all fees have been paid in full.

52.     The Final Award required that payment be made in full to MLB by Telemicro within 30 days of the entry of the Final Award, i.e., by June 28, 2019. *See* Kobre Decl., Ex. 4 at 6. The Final Award is binding on the parties.

53.     Telemicro has failed to comply with its payment obligations under both the Partial Final Award and Final Award. To date, Telemicro has not paid MLB a penny of the amount owed.

## THE FINAL AWARD SHOULD BE CONFIRMED

**The Standard of Review**

54.     Under the New York Convention and controlling Second Circuit case law, the Court's review of the Final Award is "strictly limited." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F. 3d 15, 19 (2d Cir. 1997) ("*Yusuf*") ("Under the Convention, the district court's role in reviewing a foreign arbitral award is strictly limited: 'The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.'") (quoting 9 U.S.C. § 207).

55.     Indeed, because the New York Convention and FAA provide very limited grounds on which a court may decide not to recognize an award, "confirmation of an arbitration award is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *Yusuf*, 126 F. 3d at 23 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.").

56.     Thus, the party resisting confirmation of an award has the heavy burden of proving that one of the grounds explicitly enumerated in the New York Convention or FAA applies. *See*

*Zeiler,* 500 F.3d at 164 (party opposing confirmation "has the burden to prove that one of the seven defenses under the New York Convention applies" and "[t]he burden is a heavy one, as the showing required to avoid summary confirmance is high") (internal citations and quotations omitted).

**There Is No Ground for Non-Recognition**

57.     Article V of the New York Convention permits courts to deny confirmation only where:

> a.   The parties to the [arbitration] agreement … were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or

> b.   The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or

> c.   The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration . . . ; or

> d.   The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or

e.   The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.

New York Convention, Art. V(1).

58.     Recognition and enforcement may also be refused by this Court if the Court finds that either:

f.   The subject matter of the difference [i.e., dispute] is not capable of settlement by arbitration as a matter of United States law; or

g.   Recognition or enforcement of the award would be contrary to United States public policy.

New York Convention, Art. V(2).

59.     Courts in this and other Circuits have consistently cautioned that the Article V grounds for denying or deferring confirmation are to be construed narrowly. *See, e.g., Parsons & Whittemore Overseas Co., Inc. v. Societe Generale de L'Industrie du Papier (RAKTA)*, 508 F.2d 969, 976 (2d Cir. 1974) ("*RAKTA*") (holding "defense[s] to enforcement of a foreign award . . . should be construed narrowly" to "comport with the enforcement-facilitating thrust of the Convention."); *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 288 (5th Cir. 2004) ("Defenses to enforcement under the New York Convention are construed narrowly, 'to encourage the recognition and enforcement of commercial arbitration agreements in international contracts.'") (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974)).

60.     Here, there are no grounds for non-recognition and Telemicro cannot satisfy any burden, much less the "heavy" burden, to establish that any of the Article V grounds applies.

*Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc.*, 403 F.3d 85, 90 (2d Cir. 2005).

61.     Respondents cannot claim that the arbitration clause in the Agreement was invalid, or that the dispute underlying the Final Award fell outside the scope of the same (grounds (a) and (c) above). The arbitration provision contained in the Agreement was negotiated by sophisticated parties and broadly covers "[a]ny controversy or claim arising out of or relating to [the Agreement], or the breach thereof." *See* Kobre Decl., Ex. 1 at 24. The Final Award is unquestionably an award which arises out of a breach of the Agreement.

62.     Telemicro had proper notice of the Arbitration proceeding and fully participated in presenting its case to the Tribunal (ground (b) above). The Final Award was the culmination of an arbitration proceeding that lasted well over one year and Telemicro was represented by counsel (Herbert Law Group, LLC) throughout the entire arbitration. *See* Kobre Decl. at ¶ 14.

63.     Telemicro cannot argue that the "composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties" (ground (d) above). Arbitrator Strick was jointly chosen by Telemicro and MLB to arbitrate the proceedings. Pursuant to the arbitration clause contained in the Agreement, Mr. Strick possessed the requisite twenty years of experience in commercial transactions and contract disputes provided for in the Agreement, was not employed by either party to the arbitration within the past five years, was neutral and independent to the parties, was not affiliated with auditors of either party and did not have a conflict of interest with either party to the arbitration. Furthermore, the Tribunal conducted the proceedings in accordance with AAA rules as provided for in the Agreement. *See* Kobre Decl., Ex. 1 at 24.

64.     The Final Award is binding and has not been set aside or suspended (ground (e) above). And no court outside the state of New York would be considered competent to set aside the Final Award, as the arbitration was seated in New York and governed by New York law.[3]

65.     Nor can there be any claim that the subject matter of this dispute is non-arbitrable as a matter of United States law (ground (f) above). Indeed, the Court has specifically rejected this defense in the context of international breach of contract claims on the basis that such claims do not implicate "a special national interest in judicial, rather than arbitral, resolution". *RAKTA*, 508 F.2d at 975.

66.     Finally, enforcement of the Final Award is entirely consistent with United States public policy (ground (g) above). United States courts have long favored arbitration for the resolution of disputes arising out of international commercial contracts like the Agreement here. Following Supreme Court guidance, the Second Circuit has long recognized the United States' "emphatic federal policy in favor of arbitral dispute resolution," which "applies with special force in the field of international commerce." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 847 (2d Cir. 1987) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The Second Circuit has made clear that "[e]nforcement of foreign arbitral awards may be denied on [a public policy] basis only where enforcement would violate the forum state's most basic notions of morality and justice." *RAKTA*, 508 F.2d at 974. Enforcement of the Final Award—which awarded compensatory damages to MLB for

---

[3] Nor would Telemicro have a basis on which to ask this Court to vacate the Final Award. Under the FAA, an award can be vacated only in one of four narrow circumstances, such as where the award was procured by corruption or fraud, where there was evident partiality or fraud in the arbitrators, where the arbitrators were guilty of certain kinds of misconduct, or where the arbitrators exceeded their powers. *See* 9 U.S.C. § 10. None of those circumstances apply here.

Telemicro's breach of a commercial contract—cannot in any way be said to contravene the most basic notions of morality and justice in New York or indeed anywhere in the United States.

67.    Applying the proper standard of summary review to the instant arbitration, including an examination of the limited grounds for non-recognition above, there can be no doubt that the Final Award should be confirmed.

68.    Therefore, this Court should confirm the Final Award in favor of MLB and include in its judgment the post-award interest on all amounts under the Final Award from the respective dates specified in the Final Award until the entry of the judgment at the New York statutory rate of 9% per annum as provided for in Sections III(C) and III(E) of the Final Award. *See* Kobre Decl., Ex. 7 for a calculation of damages and post-award interest accrued through the date of this filing.[4]

69.    Pursuant to Section III(F) of the Final Award, the Court should further include in its judgment an order that Telemicro pay any future attorney's fees and all costs and expenses incurred by MLB in connection with the collection of the amounts due under the Final Award including, but not limited to, fees, costs and expenses associated with conversion of the Tribunal's awards into a final judgment and enforcement of said judgment plus accrued interest on the foregoing from the time incurred until paid or reduced to judgment.

**WHERFORE, Petitioner respectfully requests an order and judgment:**

1.    Confirming the Final Award, including the specific monetary relief granted therein, and entering judgment in favor of Petitioner MLB and against Respondent Telemicro, in U.S. Dollars, in accordance with the Final Award in an amount to be specified;

---

[4] To assist the Court in determining the amount of interest that will have accrued as of the date that judgment is entered, MLB is prepared to provide the Court with an updated calculation at a later time, as contemplated in the Proposed Order and Judgment filed herewith.

2.      Awarding post-award interest at the rate of 9% per annum for unpaid 2017 rights fees ($2,401,964) from February 7, 2019, pursuant to Section III(C) of the Final Award;

3.      Awarding post-award interest at the rate of 9% per annum for unpaid 2018 rights fees ($1,000,000) from May 29, 2019, pursuant to Section III(E) of the Final Award;

4.      Awarding attorney's fees and expenses in the amount of $1,754,736.31 and post-award interest for the same at the rate of 9% per annum from May 29, 2019, pursuant to Section III(E) of the Final Award;

5.      Awarding ICDR administrative fees and expenses of the Arbitrator incurred by MLB throughout arbitration ($111,895.00) and post-award interest for the same at the rate of 9% per annum from May 29, 2019, pursuant to Section III(E) of the Final Award;

6.      Awarding attorney's fees and costs in an amount to be specified which have accrued since the date of issuance of the Final Award and through conversion of the Final Award into a judgment;

7.      Awarding attorney's fees and costs incurred in connection with the collection and enforcement of said judgment;

8.      Awarding post-judgment interest pursuant to 28 U.S.C. § 1961; and

9.      Granting such other and further relief that the Court deems just and proper.

Dated: September 18, 2019
     New York, New York

Respectfully submitted,

 /s/ Steven G. Kobre
Steven G. Kobre
(steven.kobre@kobrekim.com)
Josef M. Klazen
KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel:  212-488-1200
Facsimile:  212-488-1220

Joshua C. Kushner (*pro hac vice to be filed*)
KOBRE & KIM LLP
201 South Biscayne Boulevard, Suite 1900
Miami, FL 33131
Telephone: + 1 305 967 6100
Facsimile: +1 305 967 6120

*Attorneys for Petitioner Major League Baseball Properties, Inc.*