```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
MAJOR LEAGUE BASEBALL PROPERTIES,      :
INC.,
                                       :

              Petitioner,              :

       v.                                     OPINION & ORDER
                                       :      19 Civ. 8669 (MKV) (GWG)
CORPORACION DE TELEVISION Y
MICROONDA RAFA, S.A.,                  :

              Respondent.              :
---------------------------------------------------------------x
```

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Major League Baseball Properties, Inc., ("MLB") brought this petition seeking to confirm an arbitration award it had obtained against Corporación de Televisión y Microonda Rafa, S.A. ("Telemicro"). The district court confirmed the award and also ruled that the arbitration award permitted MLB to obtain the attorney's fees it expended in pursuing the petition. MLB has now submitted its application for those fees.[1]

I. BACKGROUND

MLB had a dispute with Telemicro over its failure to make payments for broadcast rights due under a contract. See Opinion and Order Granting Motion for Summary Judgment and Confirming Arbitration Award, filed September 14, 2020 (Docket # 37) ("SJ Op.") at 2. The

---

[1] Declaration of Steven G. Kobre Establishing Reasonable Costs and Disbursements, filed October 5, 2020 (Docket # 39) ("Kobre Decl."); Memorandum of Law in Opposition to Application for Attorneys' Fees and Costs, filed October 27, 2020 (Docket # 45) ("Res. Opp."); Declaration of Russell M. Yankwitt in Opposition to Attorneys' Fees and Costs, filed October 27, 2020 (Docket # 46) ("Yankwitt Decl."); Reply Memorandum of Law in Support of Declaration Establishing Reasonable Costs and Disbursements, filed November 16, 2020 (Docket # 51) ("Pet. Reply Mem."); Second Declaration of Steven G. Kobre in Support of Reasonable Costs and Disbursements, filed November 16, 2020 (Docket # 52).

proceeding was arbitrated, as required by the contract, and the arbitrator issued a final award on May 29, 2019, awarding MLB various categories of damages totaling more than $5 million, Final Award, annexed as Exhibit 4 to Declaration of Steven G. Kobre in Support of MLB's Petition to Confirm, Recognize and Enforce Arbitration Award ¶¶ A-D, filed September 18, 2019 (Docket # 5) ("Kobre Pet. Decl."), as well as "attorneys' fees and all costs and expenses incurred by [MLB] in connection with the collection of the amounts due under [the] Final Award, including . . . fees, costs and expenses associated with" the conversion of the Final Award "into a final judgment and enforcement of said judgment[,]" id. ¶ F.

On January 17, 2020, MLB filed a Motion for Summary Judgment to confirm the final arbitration award (Docket # 23), which was opposed by Telemicro. The district court granted summary judgment in MLB's favor, finding that "the attorneys' fees were awarded [by the arbitrator] based on the provision of the parties' contract that provided for reimbursement of attorneys' fees and costs incurred by MLB in connection with a breach of the contract and collection of amounts due[.]" SJ Op. at 7. In a separate Judgment and Order, the district court instructed MLB to "submit documentation establishing the reasonable costs and disbursements incurred from the date of the Final Award through the date of issuance of [the] Judgment and Order that are associated with the conversion of the Final Award into [the] Judgment and Order and the collection and enforcement of the same." Judgment and Order ¶ 2, filed September 14, 2020 (Docket # 38) ("Judgment and Order"). Briefing on this motion followed.

II. DISCUSSION

MLB's entitlement to attorney's fees arises from the underlying contract between the parties. See SJ Op. at 7. That contract states that it is governed by New York law. MLB and

2

Telemicro Agreement, annexed as Exhibit 1 to Kobre Pet. Decl. § Q.  Accordingly, we apply New York law to the request for attorney's fees.

        A.   Law Governing the Award of Attorney's Fees

MLB seeks $179,483.87 in attorney's fees and $4,520.39 in costs for its hours expended in obtaining the judgment in this action, not the underlying arbitration.  Kobre Decl. ¶ 3.

Where attorney's fees are provided for by a provision in a contract, such a provision is enforceable under New York law and courts "will order the losing party to pay whatever amounts have been expended . . . so long as those amounts are not unreasonable."  F.H. Krear & Co. v. Nineteen Named Trs., 810 F.2d 1250, 1263 (2d Cir. 1987); accord Wells Fargo Bank, N.A. v. Bivona & Cohen, P.C., 2016 WL 2745847, at *5 (S.D.N.Y. May 11, 2016); Ford Motor Credit Co. v. Miller, 990 F. Supp. 107, 112 (N.D.N.Y. 1998).  Under New York law, an award of attorney's fees must be "calculated on the basis of the hours actually and reasonably spent on the matter by counsel, multiplied by counsel's reasonable hourly rate[.]"  Stefaniak v. NFN Zulkharnain, 180 A.D.3d 1366, 1367 (4th Dep't 2020) (citation and internal quotation marks omitted).  Additionally,

> [a]n award of an attorney's fee pursuant to a contractual provision may only be enforced to the extent that the amount is reasonable and warranted for the services actually rendered.  In determining reasonable compensation for an attorney, the court must consider such factors as the time, effort, and skill required; the difficulty of the questions presented; counsel's experience, ability, and reputation; the fee customarily charged in the locality; and the contingency or certainty of compensation.  While a hearing is not required in all circumstances, the court must possess sufficient information upon which to make an informed assessment of the reasonable value of the legal services rendered.  There must be a sufficient affidavit of services, detailing the hours reasonably expended and the prevailing hourly rate for similar legal work in the community.

Sterling Natl. Bank v. Alan B. Brill, P.C., 186 A.D.3d 515, 520 (2d Dep't 2020) (citations and internal punctuation omitted).

3

Because of the similarity between principles governing attorney fee awards under New York law and under federal law, we will sometimes cite to federal cases to guide our decision-making. Indeed, New York cases themselves commonly cite to federal case law in articulating principles relating to an award of attorney's fees. See, e.g., Albunio v. City of New York, 23 N.Y.3d 65, 73-74 (2014); Degregorio v. Richmond Italian Pavillion, Inc., 90 A.D.3d 807, 809 (2d Dep't 2011).

B. Hourly Rate

A reasonable hourly rate is determined by considering "what a reasonable, paying client would be willing to pay[.]" Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 184 (2d Cir. 2008). Any such rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Reiter v. MTA N.Y.C. Transit Auth., 457 F.3d 224, 232 (2d Cir. 2006) (alteration in original) (internal quotation marks omitted) (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)). In addition, as was noted in Arbor Hill, a court must "step[] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." 522 F.3d at 184. In other words, we are not called upon merely to determine whether the attorneys on this case properly command the rates they seek in the marketplace. We also must award the "cheapest hourly rate an effective attorney would have charged." O.R. v. N.Y.C. Dep't of Educ., 340 F. Supp. 3d 357, 364 (S.D.N.Y. 2018) (emphasis in original).

Because the fee applicant bears the burden of establishing the reasonableness of the hourly rates requested, the applicant must "produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community[.]" Blum, 465 U.S. at 895 n.11; accord

4

Ortiz v. City of N.Y., 2016 WL 4532983, at *3 (S.D.N.Y. July 15, 2016). The Court may also "rely on its own familiarity with prevailing rates in the District." Noble v. Crazetees.com, 2015 WL 5697780, at *9 (S.D.N.Y. Sept. 28, 2015) (citing A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ., 407 F.3d 65, 82 (2d Cir. 2005); and Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)).

MLB's attorneys, Kobre & Kim, seek fees for Seven G. Kobre (identified as a "founding partner"); another partner, Josef M. Klazen; and an associate, Joshua C. Kushner --- even though "other attorneys and support staff devoted significant time to the" confirmation. Kobre Decl. ¶ 5. MLB states that the typical hourly rates for attorneys at Kobre & Kim are "$1,275 per hour for a Founding Partner, $995 per hour for a Partner, … and $695 per hour for an Associate." Id. ¶ 4. However, the firm gave MLB a 15% discount for this matter effectively making the hourly rates $1,083.75 for Kobre, $845.75 for Klazen, and $590.75 for Kushner. Pet. Reply Mem. at 4.

To support these rates, MLB submitted a declaration by Kobre, but that declaration does not give much assistance in determining "the prevailing hourly rate for similar legal work in the community," Sterling Natl. Bank, 186 A.D.3d at 520, other than the conclusory assertion that the rates charged are "similar or higher" to those charged "to clients for comparable work[,]" Kobre Decl. ¶ 11. As far as the background of the lawyers, we are told only that Kobre is a founding partner of the firm, Kobre Decl. ¶ 1; Klazen "is a partner with over 15 years of experience and a particular focus on the enforcement of judgments and arbitration awards[,]" id. ¶ 5; and Kushner "is an associate with over 9 years of experience[,]" id. No other information is provided as to any of the attorney's educational backgrounds or previous litigation experience. Typically, courts are provided much more information about rates and attorney's backgrounds. See, e.g.,

Flemming v. Barnwell Nursing Home & Health Facilities, Inc., 56 A.D.3d 162, 165 (3d Dep't 2008) (three affidavits submitted explaining "the resumes of attorneys who worked on the case").

While case law might help in determining an appropriate rate, MLB cites primarily to cases considering attorney's fees for complex commercial litigation issues, see Pet. Reply Mem. at 3-6, and the Court does not consider this a complex case inasmuch as it was simply a petition to confirm an arbitration award involving no discovery whatsoever.  While the petition was certainly contested by Telemicro, the briefing was not complex as is reflected by the issues it raised as well as the length of the substantive portions of the briefs: MLB's initial brief in support of summary judgment was 15 pages (Docket # 24), the opposition was 10 pages (Docket # 31), and the reply was 10 pages (Docket # 34).

In light of the lack of complexity, we question the relevance of MLB's citation to case law recognizing that partner billing of over $1,000 for "premium legal services" is now common. Pet. Reply Mem. at 4 (citing Themis Cap. v. Dem. Republic of Congo, 2014 WL 4379100, at *7 (S.D.N.Y. Sept. 4, 2014)).  Our own inquiry into case law reflects that courts in this District have found varying rates to be reasonable in commercial litigation matters.  As one case noted, "[c]ourts in this District have determined that hourly rates ranging from $250 to $1,260 per hour, for attorneys' work on a commercial litigation matter, were reasonable." Tessemae's LLC v. Atlantis Capital LLC, 2019 WL 2635956, at *4 (S.D.N.Y. June 27, 2019).

While there is not much case law on attorney rates in motions to confirm arbitration awards, there is a body of case law reflecting that hourly rates in breach of contract suits — which we view as normally being more complex, if anything, than petitions to confirm arbitration awards — are far lower than what is requested here.  We note that a number of cases have commonly found partner rates in the range of $350 to $650 per hour to be reasonable for

6

such cases. See Hitachi Data Sys. Credit Corp. v. Precision Discovery, Inc., 2020 WL 5731953, at *2 (S.D.N.Y. Sept. 24, 2020) ($335 to $525 for three partners); Abraham v. Leigh, 2020 WL 5512718, at *10 (S.D.N.Y. Sept. 14, 2020) (approving rate of $435 in 2019 for junior partner in "complex commercial dispute[]''), reconsideration denied, 2020 WL 5836511 (S.D.N.Y. Oct. 1, 2020); Precise Leads, Inc. v. Nat'l Brokers of Am., Inc., 2020 WL 736918, at *7 (S.D.N.Y. Jan. 21, 2020) (awarding partner rate of $512.50 in breach of contract action and noting that "other courts in this district awarding attorneys' fees in straightforward breach of contract actions have found partner rates in the range of $375 to $650 to be reasonable"); Euro Pacific Capital, Inc. v. Bohai Pharmaceuticals Group, Inc., 2018 WL 1229842, at *7-8 (S.D.N.Y. Mar. 9, 2018) ($375 for shareholder and co-chair of firm practice group); Carlton Group, Ltd. v. Par-La-Ville Hotels & Residences Ltd., 2016 WL 3659922, at *3 (S.D.N.Y. June 30, 2016) ($450 reasonable for "experienced partners and senior attorneys"); 615 Bldg. Co. LLC v. Rudnick, 2015 WL 4605655, at *3 (S.D.N.Y. July 31, 2015) ($316 to $475 for partners characterized as the "mid-range of acceptable billing rates approved in this district" (internal quotation marks omitted)); Mazzei v. Money Store, 2015 WL 2129675, at *3 (S.D.N.Y. May 6, 2015) ($450 for attorneys with fifteen to twenty years of experience in complex litigation); Rhodes v. Davis, 2015 WL 1413413, at *3 (S.D.N.Y. Mar. 23, 2015) (in breach of contract action, awarding rates of "$450 per hour (for a founding partner with approximately forty years of practice)"), aff'd, 628 F. App'x 787 (2d Cir. 2015).

Courts have awarded associate rates in simple commercial disputes at a rate far lower than the rate for partners. See, e.g., Winklevoss Capital Fund, LLC v. Shrem, 360 F. Supp. 3d 251, 257 (S.D.N.Y. 2019) ($265 for junior associate); Hitachi Data Sys. Credit Corp., 2020 WL

5731953, at *2 ($160 for associates in breach of contract suit); Rhodes, 2015 WL 1413413, at *3 ($300 "for an associate with approximately ten years of practice").

We certainly do not suggest that the attorneys in this case do not command the hourly rates they charged in the legal marketplace. But the requirement that any rate awarded by a court pursuant to a contractual attorney's fees petition be "reasonable" requires us, as was recognized by Arbor Hill, to "step[]into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." 522 F.3d at 184. In light of this mandate, we award the following hourly rates for the three attorneys in this case: for Kobre, $650; for Klazen, $500; and for Kushner, $300.

    C. Number of Hours

The Second Circuit has squarely held that an application for attorney's fees in a case arising under federal law must normally be supported by contemporaneous time records. See, e.g., Scott v. City of N.Y., 643 F.3d 56, 57-59 (2d Cir. 2011) (per curiam). The Second Circuit has recognized, however, that the rule does not apply where fees are sought under New York law. See Marion S. Mishkin Law Office v. Lopalo, 767 F.3d 144, 147-48 (2d Cir. 2014); accord Nationstar Mortg. LLC v. Dolan, 2019 WL 1970522, at *3-4 (N.D.N.Y. May 3, 2019). Nonetheless, under New York law, "it is settled that the award of fees must be predicated upon a 'proper and sufficient affidavit of services[.]'" Bankers Fed. Sav. Bank FSB v. Off W. Broadway Devs., 224 A.D.2d 376, 378 (1st Dep't 1996) (quoting Matter of T.J. Ronan Paint Corp., 98 A.D.2d 413, 419 (1st Dep't 1984)). Thus, even under New York law, the party seeking a fee "bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent[.]" Flemming v. Barnwell Nursing Home & Health Facilities, Inc., 56 A.D.3d 162, 164-65 (3d Dep't 2008).

MLB has not submitted contemporaneous time records. Instead, MLB has attached "summaries" of such records in the form of three charts along with a chart detailing the costs expended, which we will collectively refer to as the "Fee Summary Charts." See Fees and Expenses Invoiced to Major League Baseball, annexed as Exhibit A to Kobre Decl. ("Fee Summary Charts"). These charts divide the litigation into three phases: (1) "the preparation of MLB's Petition to Confirm the Final Award and supporting documentation" (126.6 hours), Kobre Decl. ¶ 6; (2) "the service of process on Telemicro" (54 hours), id. ¶ 7, and (3) "the preparation and litigation of MLB's Motion for Summary Judgment" (91.5 hours), id. ¶ 10.

The Fee Summary Charts show the hours expended by each attorney, with blocks generally describing the work that was done, the dates over which the work was done, and the total fees associated with those hours. See Fee Summary Charts at Charts 1-3. In his declaration, Kobre explains what was ultimately created or accomplished with each project. For example, for MLB's Motion for Summary Judgment, MLB prepared "a supporting 15-page memorandum of law, a 10-page reply memorandum . . . and additional declarations supporting documentation[.]" Kobre Decl. ¶ 10 (citations omitted). Aside from these explanations, the only real effort made by MLB to explain the hours spent on a project in any detail is for the service of process on Telemicro. See Kobre Decl. ¶¶ 7-9. Kobre explained that significant time had to be expended on this project to determine how to legally serve Telemicro in the Dominican Republic. Id.

Telemicro does not argue for any specific number of hours to be reduced from MLB's summaries. Instead, Telemicro objects to MLB's use of block billing and its "duplicative or excessive billing," and argues that MLB could have used portions of its previous filings to prepare later ones, and that work performed by partners and senior associates could have been

9

performed by more junior attorneys or staff. Res. Opp. at 4-6. Telemicro therefore argues for a general reduction in the number of hours billed by MLB based on these points, citing to cases that have imposed reductions of between 5% and 15% to the total hours sought. See id.

The most significant problem with MLB's Fee Summary Charts is that the charts summarize vast swaths of work into a single summary form. MLB has combined multiple tasks in the same blocks spanning weeks and months. See Fee Summary Charts at Charts 1-3. For instance, the chart detailing the hours spent on the petition to confirm the arbitration award reflects that Kushner billed 91.5 hours over two months with no detail given as to what specific tasks Kushner performed. Id. at Chart 1. Instead, the block only says: "[p]reparation and revision of Petition to Confirm Arbitration Award and supporting submissions; legal research in support of same." Id.

MLB explains that the Charts are "a summary prepared specifically to support MLB's request for attorneys' fees and costs, not a direct duplication of the invoices sent to MLB over more than a year of Kobre & Kim's work on this matter." Res. Opp. at 8. While MLB offers to provide its invoices "if the Court deems it necessary," id. at 9, the Judgment and Order awarding fees specifically instructed MLB to "submit documentation establishing the reasonable costs and disbursements incurred[,]" Judgment and Order ¶ 2, and there is no reason to delay this case to obtain more documentation simply to allow MLB to comply with a pre-existing order. In the end, as is true for block billing generally, the submission of the Fee Summary Charts "interferes with the ability of a court to evaluate the reasonableness of attorney hours," which normally results "in a reduction of fees." Crowhurst v. Szczucki, 2019 WL 6122645, at *6 (S.D.N.Y. Nov. 19, 2019); Bhungalia Family, LLC v. Agarwal, 317 F. Supp. 3d 727, 742 (S.D.N.Y. 2018) ("[C]ounsel's extensive use of block billing . . . [hindered the] Court's ability to understand how

much time was devoted to particular tasks, so as to determine whether that time was reasonably spent."). While Telemicro is certainly to be faulted for forcing MLB to bring the instant litigation by refusing to pay the final arbitration award, see Kobre Decl. ¶ 3; Pet. Reply Mem. at 2-3, it is also true that MLB "bears the burden of showing the reasonableness of the fee by providing definite information regarding the way in which time was spent[,]" Flemming, 56 A.D.3d at 164-65.

Turning to the hours themselves, we are given pause by the fact that the preparation of the petition to confirm the award, including its supporting exhibits, consumed 126.6 hours. Kobre Decl. ¶ 6; see Fees Summary Charts at Chart 1. The petition itself is a straightforward recounting of the procedural history and law governing petitions to confirm arbitration. See Petition to Confirm Arbitration, filed September 18, 2019 (Docket # 1). The accompanying exhibits consist simply of copies of pre-existing documents, with the exception of a two-page document calculating damages and interest. See Kobre Pet. Decl. Case law recognizes that confirmation of an arbitration award is a "summary proceeding" that merely "makes what is already a final arbitration award a judgment of the court." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (citation and internal quotation marks omitted). Our own review of case law shows that reasonable hours attributed to the preparation of a petition to confirm an arbitration award are far fewer than what is sought here. See, e.g., Rong De Investments Ltd. v. GFS Investments, Inc., 2019 WL 5682894, at *2 (S.D.N.Y. Nov. 1, 2019) (finding it unreasonable that "attorneys spent more than twenty-seven hours preparing, filing, and serving" a petition to confirm an arbitration); Finkel v. IAG Electric, Inc., 2019 WL 3281012, at *3 (E.D.N.Y. July 19, 2019) ("1.7 hours is a reasonable amount of time to have spent in preparation of the petition"); Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare

Fund, Annuity Fund, and Apprenticeship, Journeyman Retraining, Educ. and Indus. Fund v. Regal USA Constr. Inc., 2018 WL 401515, at *3 (S.D.N.Y. Jan. 12, 2018) (4.7 hours).

In light of the extraordinary number of hours spent preparing the petition and the lack of detail justifying the hours sought, the overall hours will be reduced by 25%.

D. Presumptively Reasonable Fees and Costs

The fees to be awarded are thus as follows:

|  | Hourly Rate | Hours Requested | Hours Awarded | Total |
|---|---|---|---|---|
| Steven Kobre | $650.00 | 6.1 | 4.6 | $ 2,990.00 |
| Josef Klazen | $500.00 | 61.7 | 46.3 | $23,150.00 |
| Joshua Kushner | $300.00 | 204.3 | 153.2 | $45,960.00 |
| Total: | | | | $72,100.00 |

E. Costs

MLB seeks $4,520.39 in costs for translation services, a special online database for Westlaw, and FedEx costs. Fee Summary Charts at Chart 4. Because Telemicro has not made any specific objections to MLB's request for costs, they are awarded in full.

III. CONCLUSION

For the foregoing reasons, MLB is awarded $72,100.00 in attorney's fees and $4,520.39 in costs, for a total of $76,620.39.

SO ORDERED.

Dated: January 7, 2021
      New York, New York

                                             GABRIEL W. GORENSTEIN
                                             United States Magistrate Judge