USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/24/2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAJOR LEAGUE BASEBALL PROPERTIES, INC.,

Petitioner,

-against-

CORPORACION DE TELEVISION Y MICROONDA RAFA, S.A., et al.,

Respondents.

1:19-cv-8669-MKV-GWG

**ORDER ADOPTING REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART THE MOTION FOR TURNOVER AND TO DENY THE MOTION TO QUASH**

MARY KAY VYSKOCIL, United States District Judge:

This matter arises from a dispute between Major League Baseball Properties, Inc. ("MLB") and Corporación de Televisión y Microonda Rafa, S.A. ("Telemicro"), a media broadcast company, concerning the latter's rights to broadcast MLB content in the Dominican Republic. After Telemicro failed to make payments for its broadcast rights under its contract, MLB terminated the contract and filed a demand for arbitration, which resulted in an award being entered in favor of MLB. This Court confirmed the arbitration award [ECF No. 37], and entered a judgment for MLB which exceeded $6 million. [ECF No. 38].

To collect on its judgment, MLB filed a motion for turnover. [ECF No. 122]. In so doing, MLB sought: (1) the funds in various bank accounts in the Dominican Republic (the "Dominican Accounts")[1] owned by Telemicro; (2) a Bell 407 helicopter owned by Telemicro; (3) the proceeds of a broadcasting contract (the "Distribution Agreement") between Telemicro International Holding Corporation ("TIHC") and a third-party, under which Telemicro was a beneficiary; and

---

[1] The "Dominican Accounts" include accounts at Banesco Banco Multiple SA, Banco Multiple Caribe, and Banco de Reservas de la Republica Dominicana. Report at 6.

(4) the funds in a checking account that TIHC held at JPMorgan Chase Bank, N.A. ("Chase"). TIHC cross-moved to quash a restraining notice filed against the Chase account. [ECF No. 153].

Magistrate Judge Gabriel W. Gorenstein issued a thorough and carefully reasoned Report and Recommendation (the "Report") suggesting that the Court grant in part and deny in part the motion for turnover filed by MLB, and that the Court deny the motion to quash filed by TIHC. [ECF No. 176] ("Report"). TIHC objected to the Report to the extent it recommended turnover of the Chase account.[2] [ECF No. 178] ("Objection"). MLB filed a response. [ECF No. 179] ("Response"). For the reasons set forth below, the Court adopts the Report in full and orders that Telemicro turn over to MLB the funds in the Dominican Accounts, the helicopter, and its right to payment under the Distribution Agreement. The Court also orders Chase to turn over to MLB the funds in the account held by TIHC.

## BACKGROUND[3]

The relevant facts are set forth in the Report and the Court assumes familiarity with them. MLB filed a motion for turnover, arguing that because Telemicro had failed to satisfy the judgment rendered against it, MLB is entitled to the contents of certain bank accounts held by Telemicro in the Dominican Republic; a helicopter owned by Telemicro; and the proceeds of a broadcasting

---

[2] Neither Telemicro nor Chase objected to the Report.

[3] The facts in this Opinion are drawn from the parties' submissions in connection with the pending motions. With respect to the motion for turnover filed by MLB, the filings include the Memorandum of Law in Support of Petitioner's Motion for Turnover [ECF No. 123] (MLB Br."); the Declaration of Leif T. Simonson in Support of Petitioner's Motion for Turnover [ECF No. 124] ("Simonson Decl."); TIHC's Memorandum of Law in Opposition to Petitioner's Motion for Turnover [ECF No. 131] ("Opp."); the Declaration of Henry E. Marines in Support of TIHC's Opposition to Petitioner's Motion for Turnover [ECF No. 132] ("Marines Decl."); the Declaration of Maribeth Gomez, filed as an exhibit to the Marines Declaration [ECF No. 132-2] ("Gomez Decl."); and the Reply Memorandum of Law in Support of Petitioner's Motion for Turnover [ECF No. 140] ("MLB Reply"). With respect to the motion to quash, the relevant documents include the Memorandum of Law in Support of Motion to Quash [ECF No. 155] ("TIHC Br."); Letter from Leif T. Simonson [ECF No. 158] ("Simonson Ltr."); the Memorandum of Law in Opposition to TIHC's Motion to Quash [ECF No. 161] ("MLB Opp."); and the Reply Memorandum of Law in Further Support of TIHC's Motion to Quash [ECF No. 168].

contract between TIHC and a third party, pursuant to which Telemicro is a beneficiary. Additionally, MLB asserted a claim to the contents of a Chase checking account held by TIHC, arguing that the funds are eligible property for turnover because Telemicro exercises "actual control" over the account. To that end, MLB served Chase with a restraining notice for the account held by TIHC. Simonson Ltr., Ex. A.

Telemicro did not respond to the motion for turnover. However, TIHC opposed the motion to the extent that it sought turnover of the proceeds of the Distribution Agreement or the funds held in the Chase account. TIHC also cross-moved to quash the restraining notice sent to Chase.

Magistrate Judge Gorenstein recommended that the Court grant the MLB motion to the extent that it requested turnover of Telemicro's Dominican Republic bank accounts and its helicopter. Report at 6-8. Magistrate Judge Gorenstein also recommended that the Court grant the MLB motion to the extent it sought funds that Telemicro received in connection with the Distribution Agreement, although he recommended that the motion be denied to the extent it sought funds from TIHC in connection with that agreement, since MLB failed to allege that TIHC is in possession or custody of such funds. Report at 8-10.

The bulk of the Report, however, was dedicated to deciding whether MLB was entitled to turnover of the Chase account held by TIHC. After twenty-two pages of thorough analysis, Magistrate Judge Gorenstein recommended that the Court grant MLB's motion with respect to the Chase account because no reasonable jury could fail to find that Telemicro "has an interest" in the Chase account and is "able to retrieve the disputed assets" as a result of its "actual control" of that account. Report at 30, 32. As a corollary, Magistrate Judge Gorenstein recommended that the Court deny the motion to quash filed by TIHC. Report at 33-34.

3

TIHC objects to the Report's recommendation regarding turnover of the Chase account. Additionally, TIHC requests that, to the extent the Report is adopted, the Court clarify that the Report made findings only with respect to the interest Telemicro had in the Chase account, and not with respect to any other property belonging to TIHC. No objections have been made with respect to any other aspect of the Report.

## LEGAL STANDARDS

### I. Report and Recommendation

In reviewing a Report and Recommendation, this Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where, like here, there are objections, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see also United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty., N.Y.*, 712 F.3d 761, 768 (2d Cir. 2013). However, where the objecting party makes only "conclusory or general objections, or simply reiterates [its] original arguments," this Court applies the clearly erroneous standard of review. *Friedman v. Cap. Accts., LLC*, No. 19-cv-7262, 2021 WL 1721665, at *1 (S.D.N.Y. Apr. 30, 2021). The clearly erroneous standard of review similarly applies to "those portions of a report and recommendation to which no objections have been made." *Braunstein v. Barber*, No. 06-cv-5978, 2009 WL 1542707, at *1 (S.D.N.Y. June 2, 2009).

### II. Turnover Proceedings

A motion to enforce a money judgment is governed by Federal Rule of Civil Procedure 69(a), which provides that "proceedings supplementary to and in aid of judgment or execution . . . must accord with the procedure of the state where the court is located." In New York, the

4

enforcement and collection of money judgments is governed by Article 52 of the Civil Practice Law and Rules ("C.P.L.R."). As relevant here, the recovery of "[p]roperty not in the possession of [the] judgment debtor" is governed by C.P.L.R. Section 5225(b), which states:

> Upon a special proceeding, commenced by the judgment creditor, against a person in possession or custody of money or other personal property in which the judgment debtor has an interest, or against a person who is a transferee of money or other personal property from the judgment debtor, where it is shown that the judgment debtor is entitled to the possession of such property or that the judgment creditor's rights to the property are superior to those of the transferee, the court shall require such person to pay the money . . . .

In other words, C.P.L.R. Section 5225(b) authorizes a turnover proceeding by a judgment creditor "against a garnishee or a transferee." *Aaron v. Mattikow*, 225 F.R.D. 407, 412 (E.D.N.Y. 2004). In order to prevail under Section 5225(b), however, the judgment creditor must satisfy two steps. First, it must show that "the judgment debtor 'has an interest' in the property the creditor seeks to reach." *Beauvais v. Allegiance Secs., Inc.*, 942 F.2d 838, 840 (2d Cir. 1991) (quoting C.P.L.R. § 5225(b)). Second, it must show that either "the judgment debtor is 'entitled to the possession of such property'" or that "'the judgment creditor's rights to the property are superior' to those of the party" currently possessing the property. *Id.* (quoting C.P.L.R. § 5225(b)).

While Section 5225(b) envisions a "special proceeding" rather than a plenary action, there is no provision for such a special proceeding under the Federal Rules of Civil Procedure. As a result, the Second Circuit has explained that "a party seeking a money judgment against a non-party garnishee may proceed by motion" under Rule 69(a) and "need not commence a special proceeding, as long as the court has personal jurisdiction over the garnishee." *CSX Transp., Inc. v. Island Rail Terminal, Inc.*, 879 F.3d 462, 469-70 (2d Cir. 2018). "A motion under Rule 69(a) is treated like a summary judgment motion." *Axginc Corp. v. Plaza Automall, Ltd.*, 2021 WL 1030228, at *7 (E.D.N.Y. Mar. 2, 2021).

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a dispute. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "may not make credibility determinations or weigh the evidence, and . . . must resolve all ambiguities and draw all permissible inferences in favor of the non-moving party." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).

## **DISCUSSION**

### I.  **OBJECTIONS**

TIHC has lodged two objections against the Report. First, TIHC objects to the ruling that the initial prong of the *Beauvais* test—*i.e.*, whether the judgment debtor "has an interest" in the property—can be satisfied by demonstrating that the judgment debtor had "actual control" over the property. Second, TIHC objects to the Report's conclusion that Telemicro *had* "actual control" over the property—that is, the Chase account. For the reasons that follow, the Court concludes that both objections—which are unoriginal (*i.e.*, were made in opposition to the motion for turnover) and thus reviewed only for clear error—are without merit.

#### *A. The Role of "Actual Control"*

As previously noted, the law governing turnover from third parties requires MLB, the judgment creditor, to prove first that Telemicro, the judgment debtor, "has an interest" in the funds held in the Chase account. *Beauvais*, 942 F.2d at 840-41 (quoting C.P.L.R. § 5225(b)). MLB proceeded on a theory that this interest could be established by demonstrating that Telemicro "actually controls" the Chase account, despite the fact that the account was held (at least nominally) by TIHC. In response, TIHC argued that a showing of "actual control" has no bearing on whether Telemicro "has an interest" in the funds and that, in support of such a proposition,

6

"MLB cite[d] four, inapposite cases." Opp. at 4.

Magistrate Judge Gorenstein agreed with MLB. Relying on the Second Circuit's decision in *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 313 F.3d 70 (2d Cir. 2002), Magistrate Judge Gorenstein began his analysis by acknowledging that under New York law, "[w]hen a party holds funds in a bank account, possession is established, and the presumption of ownership follows." *Id.* at 86 (2d Cir. 2002). But possession is not the end of the story, Magistrate Judge Gorenstein explained, as the Second Circuit in *Karaha Bodas* went on to state that the presumption of ownership "may be rebutted by evidence that the [judgment debtor] actually controlled the disputed funds." *Id.* Magistrate Judge Gorenstein concluded, as a result, that the relevant "inquiry is whether Telemicro 'actually controls' the funds in the Chase Account, using them to its own benefit as the owner would, rather than simply benefitting from TIHC's own use of the account." Report at 12.

TIHC does not attempt to distinguish *Karaha Bodas*. Rather, TIHC merely rehashes arguments it made in opposition to MLB's turnover motion, asserting that MLB had cited "four inapposite cases." Objection at 4. Two of the cases that TIHC identified were cited in the Report; the other two were not. The attempt by TIHC to distinguish these cases is unpersuasive, for the reasons explained in the margin.[4] But even if those cases were inapposite, they are not necessary

---

[4] To further emphasize the role of actual control, Magistrate Judge Gorenstein noted that "New York courts have found that a judgment debtor 'has an interest' in an account '[w]here . . . . the evidence demonstrates that a judgment debtor regularly has used another's bank account as a 'recipient' of the debtor's personal assets or as a source of payment of the debtor's expenses.'" Report at 11 (quoting *Bingham v. Zolt*, 231 A.D.2d 479, 479 (1st Dep't 1996)). TIHC argues that *Bingham* is distinguishable because it addressed a restraining notice available under C.P.L.R. Section 5222, rather than turnover under Section 5225. Objection at 5. As Magistrate Judge Gorenstein explained, however, the *Bingham* distinction drawn by TIHC is meaningless, since "an analysis under § 5222 necessarily considers the judgment debtor's interest in funds—the very issue that must be determined in a proceeding under § 5225." Report at 12 n.6 (citing C.P.L.R. § 5222(b)).

Magistrate Judge Gorenstein also highlighted a decision from the Eastern District of New York, which explained, after citing *Karaha Bodas*, that "if the Court finds that [the judgment debtor] had actual control over the [relevant accounts], the Court may compel the nominal account holders who are 'in possession or custody of the money' to turnover the Judgment Debtor's property." *Allstate Ins. Co. v. Mirvis*, 08-cv-4405, 2018 WL 4921631, at

to support the conclusion that actual control by Telemicro of the funds in the Chase account can establish that Telemicro has an interest in the account for purposes of a C.P.L.R. Section 5225(b) turnover motion. The Second Circuit clearly explained in *Karaha Bodas* the significance of "actual control" in evaluating property interests under New York law, and TIHC has not argued why that aspect of New York law does not apply with full force to C.P.L.R. Section 5225(b).

As a result, TIHC has failed to demonstrate that Magistrate Judge Gorenstein erred (let alone *clearly* erred) in his determination that MLB could prove that Telemicro "has an interest" in the Chase account by establishing that Telemicro had "actual control" of that account. (TIHC has never disputed, and does not now object, to the Report's determination that the second prong of the *Beauvais* test—*i.e.*, whether Telemicro is "entitled to the possession" of the Chase account—can be satisfied by establishing "actual control.")

### B. Evidence of "Actual Control"

Having established that the requirements of C.P.L.R. Section 5225(b) could be satisfied by establishing "actual control," the question became whether Telemicro had such control of the Chase account. MLB argued that it did. Specifically, MLB asserted that the actual control Telemicro had over the account was evidenced by the fact that payments from the Chase account were made at the direction of Telemicro through its owner, Juan Ramon Gomez Diaz—who was the father of Ivette Gomez (the nominal owner of Telemicro) and Maribeth Gomez (the nominal owner of TIHC). According to MLB, payments were routinely made from the Chase account to third parties for services provided to Telemicro and to various family members of Gomez Diaz,

---

*11 (E.D.N.Y. Sept. 4, 2018) (quoting C.P.L.R. § 5225(b)). TIHC argues that *Allstate* is inapposite because it concerned fraudulent conveyance, rather than beneficial ownership. Objection at 4. But, as noted by Magistrate Judge Gorenstein, a finding of fraudulent conveyance was merely one basis for the turnover holding in *Allstate*; that the judgment debtor had "actual control" of the relevant accounts was an alternative basis. *See* Report at 12 n.7 (citing *Allstate*, 08-cv-4405, 2018 WL 4921631, at *11).

including those who had no role in the business.

In response, TIHC argued that all payments were made pursuant to an oral agreement between TIHC and Telemicro, whereby "Telemicro sells TIHC a right to resell advertising space and to transmit its television shows." Opp. at 10. TIHC claimed that it ceased paying Telemicro pursuant to that agreement in late 2021, after it discovered that it had overpaid under the agreement by nearly $700,000—an amount that TIHC claimed it is now owed. Opp. at v. TIHC further argued that Telemicro could not have had "actual control" over the Chase account because "Maribeth Gomez . . . owns and operates TIHC independently," Opp. at iv, and because, contrary to what MLB argued, the deposition testimony of various TIHC employees did not demonstrate that Telemicro directed payments from the Chase account. Opp. at 9-10.

Magistrate Judge Gorenstein agreed with MLB. In so doing, Magistrate Judge Gorenstein catalogued voluminous evidence that TIHC made payments from the Chase account for the benefit of Telemicro and at its direction. Just one example (of many) came from deposition of a former TIHC administrator, who testified that Telemicro owner Gomez Diaz "authorized 'essentially all payments' from the Chase Account" and that upon receiving instructions from Telemicro's administrator, she did not "'consult with anyone else at [TIHC]' before making these payments." Report at 19-20 (quoting ECF No. 124-1 ("Mallelyn Gomez Dep.") at 105:2-15, 116:5-9).

Magistrate Judge Gorenstein rejected TIHC's argument that these payments could be explained by the existence of an oral agreement between TIHC and Telemicro, for which there was no evidence aside from the conclusory and self-serving statements included in the declaration submitted by the owner of TIHC, Maribeth Gomez. Report at 25-26. Moreover, Magistrate Judge Gorenstein explained that "there is abundant evidence that TIHC and Telemicro did not treat their relationship as part of a bona fide contractual relationship." Report at 26. This included the fact

that "TIHC often failed to meet supposed obligations to Telemicro, but Telemicro never made any effort to have TIHC pay these amounts," and that "despite the sum in excess of $600,000 TIHC claims it is now owed by Telemicro due to overpayments, TIHC has no 'plan for collecting on that money.'" Report at 26 (quoting ECF No. 160-2 ("Maribeth Gomez Dep.") at 150:5-16).

Relatedly, Magistrate Judge Gorenstein rejected the contention that Maribeth Gomez owns and operates TIHC independently. This determination was informed, in part, by the Maribeth Gomez's deposition testimony that she "could not recall any month in which she had spent as much as five hours running the company" and "could not explain how TIHC transmits its content, whether it uses a signal distributor, or where its commercials are shown, and could not name a single advertiser for the company." Report at 21. Magistrate Judge Gorenstein also emphasized the fact that "TIHC did not take any steps to limit Telemicro's use of the Chase account as a truly independent company might," before he concluded that "no reasonable jury could fail to find that Telemicro 'has an interest' in the Chase account as a result of its 'actual control' of that account." Report at 30.

Magistrate Judge Gorenstein reasoned that a finding that Telemicro "actually controls" the Chase account also satisfies the second step of the *Beauvais* analysis, which requires a showing that the judgment debtor is "entitled to the possession" of the account. Specifically, Magistrate Judge Gorenstein explained that "proof of 'actual control' relates directly to the question of a judgment debtor's entitlement to the funds at issue," since "[a] company that can issue checks at will from an account to creditors is, in effect, able to access the funds in that account and benefit from their use." Report at 32. Accordingly, Magistrate Judge Gorenstein found that "no reasonable jury could fail to conclude that Telemicro is 'able to retrieve the disputed assets.'" Report at 32 (quoting *Dussault v. Republic of Argentina*, 616 F. App'x 26, 27 (2d Cir. 2015)).

In objecting to the Report's finding of actual control, TIHC does not identify evidence that was overlooked or misinterpreted. Rather, it merely repeats the arguments previously presented: that all payments on behalf of Telemicro (or to family members) were the result of an arm's length oral contract; that TIHC ceased payment in late 2021, and that Telemicro now owes it a debt; that Telemicro operates independently; and that TIHC employees never testified that Telemicro directed payments from the Chase account.[5] Objection at 4-7. But Magistrate Judge Gorenstein considered these arguments in twenty-two pages of meticulous analysis. Because TIHC has failed to identify any error—let alone clear error—in that analysis, its objection is overruled.

## II.   CLARIFICATION

TIHC requests that the Court clarify that "TIHC's funds in only the Chase account are to be turned over to MLB and that no determination has been made as to any other property owned by TIHC." Objection at 8. This is unnecessary. The Report plainly recommends that the Court issue an order "requiring JPMorgan Chase Bank to turn over to MLB the funds in the Chase Account." Report at 34. There is no ambiguity in this statement as to what is to be turned over. The gratuitous request for clarification is therefore denied. *See Danaher Corp. v. Travelers Indem. Co.*, No. 10-cv-121, 2020 WL 6712193, at *4 (S.D.N.Y. Nov. 16, 2020) (denying request for clarification as "unnecessary" given that the prior order was "unambiguous[]").

## **CONCLUSION**

For the above reasons, the objections filed by TIHC are overruled. The Court has reviewed the rest of the Report, to which there is no objection, and finds that it is well-reasoned, thorough, and contains no error, clear or otherwise. The Report is adopted in its entirety.

---

[5] TIHC also argues that Telemicro is not a signatory to the Chase account, and that the money in that account does not belong to Telemicro, but is revenue that TIHC earned by selling advertising time. But those objections are beside the point, given the finding by Magistrate Judge Gorenstein that Telemicro had continued and unfettered use of the Chase account, such that it "controlled the use of the account and acted as its beneficial owner." Report at 32.

IT IS HEREBY ORDERED that:

- MLB's motion for turnover is granted in part and denied in part.

- TIHC's motion to quash is denied.

- Banesco Banco Multiple SA, Banco Multiple Caribe, and Banco de Reservas de la Republica Dominicana must turn over to MLB the Dominican Accounts belonging to Telemicro.

- Telemicro must turn over its Bell 407 helicopter.

- Telemicro must turn over its right to payment under the Distribution Agreement.

- Chase must turn over to MLB the funds in TIHC's account.

The Clerk of Court respectfully is requested to terminate docket entries 122 and 153.

**SO ORDERED.**

**Date:  March 24, 2023**
**New York, NY**

*[signature]*

**MARY KAY VYSKOCIL**
**United States District Judge**